# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>KEVIN O'CONNELL,<br><br>    Defendant. | No. CR05-0048<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the court pursuant to Defendant Kevin Patrick O'Connell's September 22, 2005 motion to suppress evidence (docket number 12). The court held an evidentiary hearing on this motion on October 12, 2005, at which the defendant was present and represented by Jonathan Hammond and the government was represented by Assistant United States Attorney Rebecca Goodgame-Ebinger. It is recommended that the defendant's motion to suppress be denied.

The motion to suppress arises out of a warrantless search of a van in which the defendant was found in the early morning of October 9, 2002. The defendant contends that the search of the van was illegal because the van was within the curtilage of his parents' farmhouse, because the officers did not have probable cause to believe that the defendant would be found in the van, and because the automobile exception to the warrant requirement does not apply.[1] The government argues that the van was not within the curtilage of the defendant's parents' residence, that the officers had probable cause to arrest the defendant for violation of a protective order and that the officers had probable

---

[1] Specifically, the defendant argues that he was using the van as his residence and the van was not readily moveable.

1

cause to believe that the defendant would be found in the van. The government further contends that the automobile exception to the warrant requirement permitted the government to search the van.

## FINDINGS OF FACT

In the early morning hours of October 9, 2002, Kelly O'Connell, the wife of the defendant, called the Linn County Sheriff's Department complaining that the defendant had violated a protective order by entering her residence. The protective order was entered with the defendant's consent on September 20, 2002, following Ms. O'Connell's complaints of domestic abuse. Linn County Sheriff Deputies Greg McGivern, David Omar, and Gary Van Cura were dispatched to Ms. O'Connell's residence. En route, the officers were informed by dispatch that Ms. O'Connell had indicated that the defendant had left her residence. She stated that it was likely that the defendant would be driving a blue 1986 Ford Escort, and was headed to his parents' farm located at 1199 Sisley Grove Road. Deputy Omar went to Ms. O'Connell's residence to respond to her initial call, while Sgt. McGivern and Deputy Van Cura continued on to 1199 Sisley Grove Road in an attempt to locate the defendant.

Upon entering the O'Connell's farmstead, the officers made their way down a quarter mile stretch of paved and gravel driveways, passing several outbuildings and four cylindrical grain bins (See Exhibit 1). Behind the grain bins, the officers found the blue 1986 Ford Escort which Ms. O'Connell said the defendant would be driving. A gray conversion van was parked next to the Ford Escort. The officers did not ask the defendant's parents for permission to enter or search the property. The van was contained within a fence that also encloses the entirety of the O'Connell homestead. Deputy Van Cura and Sgt. McGivern testified that they did not see a fence and did not have to pass through any fence when they entered the property or at anytime thereafter.

The officers used a flashlight to peer into the windows of the Ford Escort. Upon finding no sign of the defendant in the Escort, the officers turned their attention to the

2

conversion van parked next to the Escort. According to the defendant, the front end of the conversion van had extensive damage and the two front tires were flat. Neither officer noticed anything unique about the conversion van, and it was not apparent to either officer that the conversion van was not readily mobile. Deputy Van Cura looked through the driver side window of the van and saw nothing unusual. He did not see the defendant. Deputy Van Cura then opened the driver side door and noticed a lighted cellular telephone cord, indicating that the cellular telephone's power was on. Deputy Van Cura then called out the defendant's name, and the defendant answered. The defendant emerged from the van upon Deputy Van Cura's order to do so, was handcuffed, and was arrested for violating the protective order. The defendant was dressed in boxer shorts, a tee-shirt, and socks. Sgt. McGivern noticed that it looked like someone had been sleeping in the van because there were blankets in back and the backseat was folded down. The officers then searched the van for other people and for weapons. During the search, the officers discovered a loaded Remington 20-gauge shotgun with a shell in the chamber.

## CONCLUSIONS OF LAW

### A. Whether the Officers had Probable Cause to Arrest the Defendant

The first issue that the court must determine is whether the officers had probable cause to arrest the defendant, based on Ms. O'Connell's call to law enforcement stating that the defendant had been in her home in violation of a protective order. The court finds that probable cause existed to believe that the defendant had violated the protective order prohibiting him from contacting or being in close proximity with Ms. O'Connell. There is no indication that on any prior occasion Ms. O'Connell had given a false report to law enforcement concerning the defendant violating the protection order. The protective order had been recently entered with the defendant's consent. Because the officers had probable cause to believe that the defendant had violated the protective order, it was mandatory, pursuant to Iowa law, for the officers to attempt to locate the defendant and take him into custody. Iowa Code § 236.11 states, in relevant part:

> If a peace officer has probable cause to believe that a person has violated an order or approved consent agreement entered under this chapter, a temporary or permanent protective order . . . the peace officer shall take the person into custody and shall take the person without unnecessary delay before the nearest magistrate judge in the judicial district in which the person was taken into custody.

The court finds that the officers had probable cause to believe that the defendant had violated the protective order based on Ms. O'Connell's telephone call, and pursuant to Iowa Code § 236.11, they were required to take the defendant into custody.

## **B. Whether the Van was Within the Curtilage of the O'Connell Farmhouse**

The defendant argues that the van was within the curtilage of his parents' farmhouse. The government argues that the van was not within the curtilage of the O'Connell farmhouse because (1) the van was some distance from the house, "located in a drive area by grain bins adjacent to an open field"; (2) the van was not located within a fence surrounding the farmhouse; (3) there was no objective data which would indicate to the officers that the van was being used for activities and privacies of domestic life; and (4) "while the van was not visible from the road, it was clearly visible from an open field adjacent to where the van was found."[2]

Ordinarily, the Fourth Amendment is not implicated when officers knock on a resident's door or otherwise approach a residence seeking to speak with the inhabitants. Rogers v. Pendleton, 249 F.3d 279, 289 (4th Cir. 2001). "'No Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors- - such as driveways, walkways, or similar passageways.'" United States v. Khabeer, 410 F.3d 477, 481-82 (8th Cir. 2005) (Officers observed television set from the residence's driveway) (quoting United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984)). The police may not, however, conduct a full search of

---

[2] The government cites to Dunn, 480 U.S. at 303 ("[Defendant] did little to protect the barn area from observation by those standing in the open fields.")

4

a residence or its curtilage without a warrant or another justification that would be sufficient for entry into the home itself. Rogers, 249 F.3d at 289. At least two Supreme Court decisions have stated that the curtilage is entitled to the same level of Fourth Amendment protection extended to the home "so that, as with the home, probable cause, and not reasonable suspicion, is the appropriate standard for searches of the curtilage." Rogers v. Pendleton, 249 F.3d 279 (4th Cir. 2001) (citing Oliver v. United States, 466 U.S. 170 (1984); United States v. Dunn, 480 U.S. 294 (1987)). In Oliver, the Supreme Court held that a home's curtilage extends to the "area around the home to which the activity of home life extends." United States v. Eng, 753 F.2d 683, 686 (8th Cir. 1985) (citing Oliver, 466 U.S. 170). Assuming, without deciding, that the van was within the curtilage of the farmhouse, the court finds that the officers did not violate the defendant's Fourth Amendment interests when they traveled on the driveway of the O'Connell farmstead, identified the Ford Escort and conversion van, and peered inside the windows of the Escort and the conversion van. The officers did not engage in a "generalized search" of the kind that normally implicates Fourth Amendment interests, the officers stayed on a lane designated for vehicular traffic, the officers quickly identified the Ford Escort, which the officers had good reason to believe the defendant had been in a short time earlier, and the officers limited their search to determining whether the defendant was present. Accordingly, the court turns to the issue of whether probable cause supported Deputy Van Cura's opening of the conversion van door.

### C. Whether the Officers had Probable Cause to Believe that Defendant was in the Conversion Van

The court next considers whether Sgt. McGivern and Deputy Van Cura had probable cause to believe that the defendant was in the van parked next to the Ford Escort. The government argues that the officers had probable cause to believe that the defendant was

5

in the van, and further asserts that the "[d]efendant concedes as much."[3] The defendant argues that the government has failed to demonstrate that the officers had probable cause to believe that the defendant was located in the van. The defendant argues that the mere fact that the van was parked alongside the vehicle which Ms. O'Connell had reported the defendant would likely be driving, the Ford Escort, is not sufficient to create probable cause to believe that the defendant would be found in the van. While the court considers this to be a close question, the court finds that the government has failed to demonstrate that probable cause[4] existed to believe that the defendant would be found within the van.[5]

The court's determination that the officers did not have probable cause to believe that the defendant would be found in the van does not end the court's inquiry. It is critical to remember that the act of opening the van door revealed nothing other than the observation of a cellular telephone cord and the defendant's own acknowledgment of his presence in the van. However, assuming that the defendant's Fourth Amendment rights were violated when Deputy Van Cura opened the van door and looked inside, the court finds that the subsequent search of the van, which produced the firearm at issue, was a valid search incident to the lawful arrest of the defendant. See United States v. Green, 111 F.3d 515 (7th Cir. 1997) (Holding that outstanding arrest

---

[3] The government's contention that the defendant "concede[d]" that the officers had such probable cause is incorrect. The defendant, in his motion to suppress, simply stated that "[t]he most that can be said is that the police somehow had probable cause to believe that the [d]efendant would be found inside the [van] because it was parked alongside the vehicle which Kelly O'Connell thought he might have been driving that evening." The court finds that this is not a concession.

[4] See United States v. Green, 111 F.3d 515, 520 (7th Cir. 1997) ("That on one occasion a car is parked on the street in front of a house where a fugitive resides is insufficient to create reasonable suspicion that the car's occupants had been or are about to engage in criminal activity.")

[5] Because the court finds that probable cause did not exist to believe that the defendant was in the van, the court finds that the automobile exception does not apply.

warrant for the other occupant of the vehicle constituted intervening circumstances that sufficiently dissipated the taint from the earlier illegal seizure, and accordingly, the evidence obtained during the search of the defendant's automobile was admissible as a search incident to the arrest of the other occupant of the vehicle.); see also United States v. McGill, 125 F.3d 642, 644 (8th Cir. 1997) (quoting United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir. 1994) (citations omitted)) ("Assuming that [the defendant's] rights were violated when [the officer] put his head through the truck's open window . . . the subsequent search of the truck was validated by [the defendant's] voluntary consent to search. . . . Even if consent is the result, in a 'but for' sense, of a Fourth Amendment violation, the consent will validate a subsequent search if the consent is 'sufficiently an act of free will to purge the primary taint.'").

While it is true that "but for" the illegal opening of the van door, the officers would not have discovered the defendant, and would have therefore not discovered the firearm in a search incident to the defendant's arrest, this fact does not necessitate a finding that the firearm should be suppressed under Wong-Sun. "[I]n Wong-Sun, 371 U.S. 471, 487-88 (1963), the Supreme Court did not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Green, 111 F.3d at 520 (quoting Wong-Sun v. United States, 371 U.S. at 487-88). Accordingly, "even in situations where the exclusionary rule is plainly applicable, the Supreme Court has declined to adopt a 'per se' or 'but for' rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal [search]." Id. (citing United States v. Ceccolini, 435 U.S. 268, 276 (1978)).

Rather, the court's inquiry in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 520-21 (citing Wong-Sun, 371 U.S. at 488). For example,

7

in this case it would be "startling to suggest that because the [officers] illegally [opened the van door], they could not arrest" the defendant who was found inside of the van and for whom probable cause existed to arrest based on the alleged violation of the protective order. Id. at 521. "Because the arrest [of the defendant was] lawful, a search incident to the arrest [was] also lawful. The lawful arrest of [the defendant] constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal [act of opening the van door]." Id.; see also United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995) (holding that although the initial stop and arrest of the defendant may have been invalid, the defendant's "resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible.") "[W]here [there is] a lawful arrest due to an outstanding warrant," or in this case probable cause to believe that the defendant had violated a protective order mandating his arrest, "consent (or any act for that matter) by the defendant is not required" for the intervening circumstances exception to apply. Id. at 522.

Finally, in determining whether the attenuation doctrine is applicable, the court considers the "purpose and flagrancy of the official misconduct." United States v. Kreisel, 210 F.3d 868, 869-70 (8th Cir. 2000) (citing Brown v. Illinois, 422 U.S. 590, 604 (1975)). In the present case, there is no evidence that Sgt. McGivern and Deputy Van Cura purposefully engaged in misconduct, and the unlawfulness of opening the van door was "certainly not flagrant." Kreisel, 210 F.3d at 870. While the court has found that it was inappropriate for Deputy Van Cura to open the van door because probable cause did not exist to believe that the defendant was in the van, there is no evidence of bad faith on the part of Deputy Van Cura, who believed, albeit incorrectly, that probable cause supported opening the van door. See Green, 111 F.3d at 523.

8

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[6] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's motion to suppress (docket number 12) be denied.

November 7, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[6]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.